UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| MICHAEL BRANDNER, JR., | CIVIL DOCKET |
| Plaintiff | |
| | |
| VERSUS | NO. 18-982 |
| | |
| STATE FARM MUTUAL AUTOMOBILE | SECTION: "E" (4) |
| INSURANCE COMPANY, ET AL., | |
| Defendants | |

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment on the Issue of Causation filed by Plaintiff Michael Brandner.[1] Defendant State Farm Mutual Automobile Insurance Company ("State Farm") opposes the motion.[2] Plaintiff filed a reply.[3] For the following reasons, the Motion for Partial Summary Judgment is **DENIED.**

## FACTUAL & PROCEDURAL BACKGROUND

This case arises out of a motor vehicle accident that occurred on August 25, 2016.[4] Plaintiff Michael Brandner alleges he and his children were stopped in a lane of travel on I-10 in Jefferson Parish when Defendant Mirna Velasquez struck their vehicle from behind.[5] The parties have stipulated that Defendant Velasquez was 100% at fault for the collision.[6] Plaintiff's remaining claim is against State Farm in its capacity as his primary uninsured motorist coverage carrier.[7]

---

[1] R. Doc. 162.
[2] R. Doc. 176.
[3] R. Doc. 192.
[4] R. Doc. 1-4 at 1.
[5] *Id.* at 3.
[6] R. Doc. 199.
[7] Plaintiff's claims brought on behalf of his minor children have been resolved. Plaintiff's claims against Defendant Velasquez and Defendant Nautilus Insurance Company have been dismissed. R. Doc. 199.

1

On December 24, 2018, Plaintiff moved for summary judgment on the issue of medical causation.[8] Plaintiff contends there are no material facts in dispute with respect to whether the injuries to his neck (cervical spine), back (lumbar spine), left shoulder, and right elbow were caused and/or aggravated by the August 25, 2016 motor vehicle accident because six treating physicians and the IME expert hired by State Farm all conclude the motor vehicle accident more probably than not caused a new injury or aggravated an old injury.[9] State Farm argues there are material facts in dispute with respect to the causation of Plaintiff's injuries because the doctors' conclusions are conditioned upon Plaintiff's reports of medical history and pain. State Farm highlights that Plaintiff had pre-existing injuries, was involved in other accidents after the August 25, 2016 incident, and did not provide accurate reports of pain to the doctors.[10]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] "An issue is material if its resolution could affect the outcome of the action."[12] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[13] All reasonable inferences are drawn in favor of the non-moving party.[14] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[8] R. Doc. 162.
[9] R. Docs. 162; 192.
[10] R. Doc. 176.
[11] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[12] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[14] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[15]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[16]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[17] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[18] Thus, the non-moving party may defeat a motion for

---

[15] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[16] *Celotex*, 477 U.S. at 322–24.
[17] *Id.* at 331–32 (Brennan, J., dissenting).
[18] *See id.* at 332.

3

summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party." [19] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[20]

## LAW AND ANALYSIS

Under Louisiana law, a Plaintiff in a personal injury lawsuit must prove by a preponderance of the evidence the causal relationship between the injury sustained and the accident which caused the injury.[21] To demonstrate the causal relationship between the accident and the subsequent injury, a plaintiff must prove through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident.[22]

### I. Doctors' Deposition Testimony and Expert Reports

Plaintiff's statement of uncontested material facts consists entirely of excerpts from the depositions of Plaintiff's treating physicians and the report of Defendant's IME expert. Plaintiff contends these quotes demonstrate it is undisputed that it is more probable than not that the injuries to his neck (cervical spine), back (lumbar spine), left

---

[19] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[20] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[21] *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95); 650 So. 2d 757, 759.
[22] *Id.*

4

shoulder, and right elbow were caused by the August 25, 2016 motor vehicle accident.[23] State Farm admits Plaintiff accurately quoted the deposition testimony and expert report.[24] However, State Farm denies that the opinions establish Plaintiff's injuries were caused by the subject accident as a matter of fact. State Farm points out that Plaintiff quotes only parts of the physicians' deposition testimony regarding causation and thus paints an incomplete picture of the doctors' opinions on causation. State Farm also argues the doctors' conclusions are premised upon Plaintiff' providing an accurate self-report of pain and medical history and thus do not establish causation as a matter of fact.

### A. Dr. Charles Schlosser

Plaintiff's statement of uncontested material quotes Dr. Schlosser's deposition as follows:

> Q: Doctor, based upon your examination, based upon the procedures you performed, based upon the information you have regarding Mr. Brandner and the treatment that you provided him in the years 2011, 2014, seeing him for this particular accident, the imaging studies that's in the file, Dr. Lonseth's records, Dr. Lonseth's examinations, can you say it's more probable than not that the automobile accident of August 2016, exacerbated any of Mr. Brandner's cervical injuries?
> A: Yes.
> Q: Doctor, can you say it's more probable than not that the automobile accident of August 2016, aggravated any of Mr. Brandner's lumbar spine?
> A: Yes.[25]

State Farm points out that later in his deposition, Dr. Schlosser testified as follows:

> Q: Okay. The opinions you've rendered today on causation, you would agree those are based on your exam findings, correct?
> A: Correct
> Q: The history provided by the patient, right?
> A: Right.
> Q: And then the subjective feedback given by the patient, Mr. Brandner, right?
> A: Correct.

---

[23] R. Docs. 162; 192.
[24] R. Doc. 196.
[25] R. Doc. 162-5 at 2-3.

5

Q: You would agree that if the history that was given to you is not accurate, then your opinions would be subject to revision?
A: Possibly.[26]

### B. Dr. Fred DeFrancesch

Plaintiff's statement of uncontested material quotes Dr. DeFrancesch's deposition as follows:

> Q: Let's talk about the second paragraph, just so we're clear?
> A: Sure. It appears more probable than not in my professional medical opinion as a board-certified practitioner of Physical Medicine Rehabilitation, Pain and Spinal Cord Injury Medicine, that his cervical and lumbar facet syndromes are related to the accident occurring August 25th, 2015.
> Q: So, Doctor, here's my very pointed question to you. Doctor, can you say that it's more probable than not that the actual cervical injuries that Mr. Brandner complained of as a result of the August 25th, 2016 is – is directly related to that automobile accident?
> A: So, the cervical issues certainly, more likely than not.
> Q: Doctor, can you say it's more probable than not that the automobile accident of August 25th, 2016 aggravated and/or exacerbated any prior lumbar juries that he may have had prior to that particular accident?
> A: So, yes, very likely. The interesting thing would be what kind of injections did he have. Right? If it was epidural, you probably wouldn't even correlate it to any exacerbation. It would be a new thing all together, because epidurals should not really help a facet-mediated issue.[27]

State Farm points out that Dr. DeFrancesch also testified as follows:

> Q: If you're providing an opinion on causation or etiology of the complaints that you treated him for and the need for future treatment and there's a trauma that's the key issue, would pre-trauma history be a significant part of your determination of etiology?
> A: I mean, it can be helpful.
> Q: If Mr. Brandner treated for low-back pain for an extended period of time prior to the car accident, would that be an important issue to address in connection with an opinion on etiology?
> A: If he was having a longstanding chronic low-back pain, it would certainly be important, yes.[28]

---

[26] R. Doc. 196-11 at 9.
[27] R. Doc. 162-6 at 2-4.
[28] R. Doc. 196-12 at 4-5.

### C. Dr. Michael Haydel

Plaintiff's statement of uncontested material quotes Dr. Haydel's deposition as follows:

> Q: Doctor, I'm going to be a little more general. Doctor, can you say it is more probable than not that the injuries Mr. Brandner presented to you with for his cervical spine are directly related to the August 25th, 2016 automobile accident?
> A: More probably than not, correct
> Q: Doctor, can you say it is more probable than not that the injuries that Mr. Brandner presented to you with of the lumbar spine were aggravate by the automobile accident of August 25th, 2016?
> A: More probably than not they were aggravated, but they were also increased in the injury.
> Q: Doctor, would you say it is more probable than not that the automobile accident of August 25th, 2006 caused the actual complaints and symptoms that Mr. Brandner presented to you with for his left shoulder?
> A: More probably than not the injury to the left shoulder was the result of the rear-end collision that he sustained.
> Q: Doctor, can you say it is more probable than not that the automobile accident of August 25th, 2016, aggravated any preexisting epicondylitis injury to his right elbow?
> A: More probably than not the accident he sustained, the rear-end collision, is the result of the aggravation to the right elbow. However, there was significant ligament damage to the right elbow as the result of the accident.[29]

State Farm points out that Dr. Haydel agreed that "if the reports of pain for a patient are inaccurate, that would cause [his] findings to be inaccurate."[30]

### D. Dr. William Junius

Plaintiff's statement of uncontested material quotes Dr. Junius' deposition as follows:

> Q: Let's go with the first one, Doctor. Can you say it's more probable than not that the surgery that you performed on the actual labral tear is directly related to the automobile accident of August 2015?
> A: Yes, that is my opinion

---

[29] R. Doc. 162-7 at 2-4.
[30] R. Doc. 196-8 at 14.

7

> Q: Doctor, can you say it's more probable than not that the actual AC joint surgery that you're going to perform in December of 2017 is directly related to the August 2016 automobile accident?
> A: Yes.
> Q: Doctor, can you say it's more probable than not that the actual medical treatment and the PRP shots that you've given Mr. Michael Brandner regarding his medial epicondylitis or common flexor injuries are directly related to the automobile accident of August 2016?
> A: Yes.
> Q: Doctor, can you say it's more probable than not that the surgery that you recommend to fix either the 15 millimeter or 21 millimeter tear that we now see on the new MRI that wasn't present on the original MRI is directly related to the actual automobile accident of August 2016?
> A: Yes.
> Q: Doctor, can you say it's more probable than not that the actual injury to the AC joint/the arthritic changes that we talked about earlier was aggravated by the automobile accident of August 2016?
> A: Yes.
> Q: Doctor, is it fair to say that you do not believe—or is it fair to say that it's more probable than not that you do not believe that the actual ATV accident played a role in any of his shoulder injuries?
> A: So, my opinion on the ATV accident and the shoulder injury is that I don't think that the ATV accident caused his labral tear. He did have some positive findings prior to the ATV accident that were consistent with a labral tear, but I was still in the process of diagnosing him. So, I think that it does make things a little bit more difficult. But when he did present to me, it was strictly for his elbow and his forearm. He had a lot of swelling, a lot of bruising around there. I forgot the exact mechanism that he explained to me, but he did not complain of any shoulder pain at that time when he called me up and said my elbow is really hurting me, can you see me. And he also did have some findings prior to that which were consistent with a labral injury as well. So that is my reasoning why I don't think that the ATV accident caused his labral tear. That's why I think that the motor vehicle collision caused his labral tear. Now, could it have irritated his shoulder? It could have. But it didn't, because he didn't complain of that to me. So that's the reasoning for my opinion.[31]

State Farm points out that Dr. Junius's testimony quoted above reveals inconsistencies regarding his opinion on whether Plaintiff's labral tear was caused by the subject automobile accident or a subsequent UTV accident. State Farm points out that Dr. Junius also testified as follows:

---
[31] R. Doc. 162-8 at 2-5, 7-8.

> Q: So your opinions regarding medical causation are–you're relying on Mr. Brandner to give accurate self reports to you in regards to what pain he experienced after this ATV accident?
> A: It's not specifically—yes, I do rely on his subjective description and complaints and everything else, but I also look at objective findings. It's not strictly subjective.
> Q: Doctor, your medical causation opinion is based upon Mr. Brandner's self-reports to you of onset of pain subsequent to an automobile accident.
> A: Yes.
> . . . .
> Q: So you're relying on his self reports of pain subsequent to the automobile accident?
> A: Yes[32]

### E. Dr. Eric Lonseth

Plaintiff's statement of uncontested material quotes Dr. Lonseth's deposition as follows:

> Q: That's okay. Doctor, can you say it's more probable than not that the automobile accident of August 25th, 2016 necessitated the actual procedures that you performed on the cervical spine?
> A: Yes.
> Q: Doctor, can you say it's more probable than not that the automobile accident of August 25th, 2016 caused new injuries to the lumbar spine?
> A: Yes.
> Q: Doctor, can you say it's more probable than not that the automobile accident of August 25th, 2016 aggravated preexisting conditions of Mr. Brandner's lumbar spine?
> A: Yes.
> Q: Doctor, can you say it's more probable than not that the actual procedures you performed on Mr. Brandner's lumbar spine are directly related to the automobile accident of August 25th, 2016?
> A: Yes.[33]

State Farm points out that Dr. Lonseth also testified as follows:

> Q: What is the importance of taking a history from a patient?
> A: A history helps find out what I should be treating. What may be the cause of the pain. What may be some of the comorbidities. What are some things that may have responded in the past. What are some of the risks I should look out for. And have a better overall understanding of the patient.

---

[32] R. Doc. 196-7 at 134-35.
[33] R. Doc. 162-9 at 2-4.

Q: In this context, the history – in the legal context is it important to make a determination regarding medical causation?
A: Yes.
Q: And if there's not an accurate an complete history provided to you it would cause any opinions regarding medical causation to also be inaccurate?
A: No. I–I would not say that. We'll – we'll stop speaking about generalities and we'll–we'll get more into specifics.
Q: So you don't believe that, that an inaccurate history would—would cause your opinions to be inaccurate?
A: Well, if we're going to be speaking about inaccuracies I'll make it more specific. Inaccurate could mean many things. So if the date of an accident being off by a day, you know, somebody having neglected to mention the toe pain in addition to back pain, you know, having—having had back pain that resolved a year, two years ago and didn't have it immediately before the accident, not mentioning, you know, they have abdominal pain with ibuprofen. I mean, these are all things that if not included in the record you can label it, quote, inaccurate. But they don't negate—the assessment that I make. So "inaccurate" is a very vague term.
Q: if a person doesn't report the type of treatment they receive to the area of their body that they're claiming could be injured in a traumatic event, if they don't report that to you that would cause your opinion regarding medical causation in regards to the injuries being claims to be inaccurate?
A: Again, we're speaking very vague and general. I'd like to get more specific. But in this case, in speaking about him, in general, I know he had back pain before that was not brought up on the initial visit and that he said that he—that it resolved, I'm not sure how many years, before the accident. And that contributes to my assessment but that does not negate, you know, the assessment that I make.
Q: So he reported to you that his low back pain had resolved years before the accident? I think he had – the pain resolved – in looking at your records, the pain resolved –
A: Right.
Q: —a number of years ago?
A: Correct.
Q: So that's what he reported to you?
A: Correct.[34]

### F.    Dr. Everett Robert

Plaintiff's statement of uncontested material quotes Dr. Robert's deposition as follows:

---

[34] R. Doc. 196-13 at 4-7.

10

> Q. Now, Doctor, you've heard all these questions that these fine lawyers asked you today, you reviewed all these films for us today, you reviewed the medical records again today, you've taken your own personal history, you performed your own physical examinations. Can you say that it's more probable than not that the automobile accident of August 25, 2016, aggravated any pre-existing cervical issues Michael Brandner may have had that were depicted on any of the MRIs that these gentlemen talked about today?
> A. Oh, yeah. Do I think -- you know he had -- he probably had degenerative changes in his cervical spine prior.
> Q. Doctor, do you say it's more probable than not that the automobile accident of August 25, 2016, aggravated any of the low-back pre-existing findings on either X-rays or MRIs that we talked about today?
> A. Yes.
> Q. Doctor, the treatment that Mr. Brandner has received from Dr. Lonceth where he has undergone multiple ESIs and multiple rhizotomies, would that be the kind of conservative treatment that you would offer to Mr. Brandner based upon your physical examination?
> A. Not just the physical examination. Due to his complaints, MRI and physical examination combined.
> Q. Got you. Doctor, the actual radicular pain that Mr. Brandner noted to you that actually has gotten somewhat better, would you say that that's more probably than not related to the automobile accident of August 25th, 2016?
> A. Yes.[35]

State Farm points out that Dr. Robert testified he relies on a patient's self-reports of pain in making a determination of medical causation.[36]

### G. Dr. Ralph Katz

Plaintiff's statement of uncontested material quotes Dr. Katz's expert report as follows:

> Q: Please advise of your diagnosis regarding any issues or conditions Mr. Brandner claimed were caused by the alleged accident. Further advise whether any such injuries or conditions were actually caused by the alleged or they are the result of preexisting conditions, subsequent accidents, and/or have a cause other than the accident?
> A: With respect to his cervical spine, he is experiencing posterior cervical pain, predominantly with extension. The MRI I reviewed from August 31, 2016, which was shortly after the accident, demonstrates preexisting multilevel degenerative spondylolytic changes. This includes degenerative

---

[35] R. Doc. 162-10 at 2-4.
[36] R. Doc. 196-2 at 17-18.

disk space narrowing with desiccation and facet arthrosis. There are also disk osteophytes leading to some neural foraminal narrowing. Based on the fact that he had no complaints of cervical pain prior to the accident of August 25, 2016, and subsequently developed posterior neck pain with some radicular symptoms after, I would state based on history that he experienced an aggravation of a previously asymptomatic cervical condition leading to neck pain, primarily from the facet joints, and some radicular symptoms in the right arm for which he had an epidural and the symptoms have resolved. He is currently asymptomatic with respect to any radicular symptoms, but still experiencing posterior neck pain. On examination he has axial neck pain with extension, consistent with facet-oriented type pain. As to any other aggravations or causes of symptoms in the neck after the August 25, 2016 accident, he denies experiencing any pain from the other 2 accidents which he noted to me today.

Q: What is the etiology of the diagnosed injuries or conditions?

A: In my opinion, I believe he sustained an aggravation of a previously asymptomatic condition in his cervical and lumbar spine. This was mainly issues with respect to the facet joints. Early on he had some radicular symptoms, which have resolved. With respect to the right elbow, and the history provided to me, I believe that he had a preexisting tendinitis in the elbow years ago, which was asymptomatic, but based on the new MRI clearly there was a traumatic event in which he had some detachment of the common flexor group. He did have 2 other subsequent accidents, but he denies having any injuries to the right elbow. Based on this information, unless other information is provided, I would state that the right elbow pain was a result of the August 25, 2016 accident as per Mr. Brandners history. As for the left shoulder, he has had no prior injuries to the left shoulder. Based on the complaints of pain at the time of the accident in the left shoulder, I believe that he was correctly diagnosed with a posterior labral tear. He subsequently was also diagnosed with AC arthrosis. I believe the accident possibly aggravated a preexisting condition or caused the posterior labral tear. Based on his report that he was asymptomatic prior to the accident. However, with respect to the other 2 accidents, he states that he did not have any injuries from those 2 other accidents. But, with the rollover accident onto the left forearm and subsequently, injury to the left forearm, there is a possibility that could have caused some injury to his neck and shoulder, however, again he said it did not.[37]

State Farm points out that Dr. Katz based his opinion on Plaintiff's medical history and self-reports of pain.[38] State Farm highlights the portion of Dr. Katz's report indicating

---

[37] R. Doc. 162-11 at 2-3.
[38] *Id.*

"there is a possibility that [the UTV accident] could have caused some injury to his neck and shoulder."[39]

The deposition testimony and expert report excerpts quoted by Plaintiff do not provide the complete picture regarding the experts' opinions on causation and do not demonstrate there is no disputed issue of material fact. State Farm highlights Dr. Katz's report that the MRI taken shortly after the August 25, 2016 accident showed Plaintiff suffered preexisting degenerative changes in his cervical spine.[40] Dr. LeBlanc testified that she recalled treating Plaintiff's neck and back in 2015.[41] State Farm argues the presence of degenerative changes and the fact that Plaintiff was treated by a chiropractor for neck and back pain prior to the accident creates a disputed issue of fact as to whether the accident caused his current complaints. Additionally, State Farm highlights Plaintiff's treatment by Dr. Schlosser for lower back pain in July of 2011 and April of 2014. State Farm points to Dr. Katz's report saying the MRI images taken of Plaintiff's lumbar spine before and after the accident are "essentially the same."[42] Similarly, State Farm points out that Plaintiff testified he did not experience issues with his right elbow after 2012 because his tendinosis went away[43] but that Dr. LeBlanc recalled Plaintiff had elbow pain or some kind of elbow issue when he visited her in 2013.[44] Genuine issues of disputed fact exist with respect to medical causation. State Farm is entitled to question the doctors to determine whether their opinions would change if they had additional or contradictory

---

[39] *Id.*
[40] R. Doc. 196-4 at 19.
[41] R. Doc. 196-6 at 4-6.
[42] R. Doc. 196-4 at 19-20.
[43] R. Doc. 196-5 at 8.
[44] R. Doc. 196-6 at 7.

information about Plaintiff's medical history and treatment prior to the accident. This is standard cross-examination in a personal injury case.

## II. Expert Opinions Are Not Facts

Further, State Farm argues the opinions of these experts are not facts and, as a result, cannot demonstrate there is no disputed issue of material fact with respect to the causation of Plaintiff's injuries. The U.S. Supreme Court has upheld the denial of a summary judgment motion when the evidence before the district court consisted solely of expert opinions, much as in this case. In *Sartor v. Arkansas Natural Gas Corp.*, the only evidence in support of the motion for summary judgment was the opinion testimony of experts, who all agreed with the plaintiff.[45] Nevertheless, the district court, the Fifth Circuit, and the U.S. Supreme Court denied summary judgment. The Supreme Court emphasized that "opinions, even if entitled to some weight, have no such conclusive force that there is error of law in refusing to follow them."[46] Rather, "it is for the jury to decide whether any, and if any what, weight is to be given to the testimony."[47] State Farm is correct that the opinion testimony offered by Plaintff does not demonstrate there are no material facts in dispute with respect to the causation of Plaintiff's injuries.

## III. Medical Causation Should Be Left to the Jury

Finally, State Farm argues the question of causation is a factual determination that should be left to the jury. The Louisiana Supreme Court agrees and has concluded, "causation is an issue of fact that is generally decided at the trial on the merits."[48] Similarly, another section of this Court has concluded that, even when the parties

---

[45] *Sartor v. Ark. Nat. Gas Corp.*, 321 U.S. 620, 627-28 (1944).
[46] *Id.* at 628.
[47] *Id.* at 627.
[48] *Estate of Adams v. Home Health Care of La.*, 00-2492, p. 1 (La. 12/15/2000); 775 S0.2d 1064, 1064.

14

stipulate the defendant is liable, "causation is a determination pregnant with factual questions."[49] As a result, Plaintiff is not entitled to summary judgment on the issue of whether the injuries to his neck, back, right elbow, and left shoulder were caused by the August 25, 2016 motor vehicle accident.

## CONCLUSION

Disputed issues of material fact preclude summary judgment on the issue of whether Plaintiff's neck, back, right elbow, and left shoulder injuries were caused by the August 25, 2016 motor vehicle accident.

Accordingly;

**IT IS ORDERED** that the Motion for Partial Summary Judgment on the Issue of Causation[50] is **DENIED.**

**New Orleans, Louisiana, this 8th day of February, 2019.**

                                                  _____
                                                      **SUSIE MORGAN**
                                      **UNITED STATES DISTRICT JUDGE**

---

[49] *Miller v. Mr. B's Bistro*, No. 04-3271, 2005 WL 2036780, at *3 (E.D. La. Aug. 3, 2005); *see also Berry v. Roberson*, No. 13-145, 2014 WL 4373265 (E.D. La. Sept. 3, 2014).
[50] R. Doc. 162.