UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL BRANDNER, JR.,<br>    Plaintiff | CIVIL DOCKET |
| VERSUS | NO. 18-982 |
| STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY, ET AL.,<br>    Defendants | SECTION: "E" (4) |

## ORDER AND REASONS

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion *in Limine*.[1] State Farm seeks to exclude evidence regarding Plaintiff's need for and the cost of radiofrequency ablations ("RFAs")[2] for the remainder of his life expectency. Plaintiff opposes the motion.[3]

## BACKGROUND

This case arises out of a motor vehicle accident that occurred on August 25, 2016.[4] Plaintiff Michael Brandner and his children were stopped in a lane of travel on I-10 in Jefferson Parish when Defendant Mirna Velasquez struck their vehicle from behind.[5] The parties have stipulated that Defendant Velasquez was 100% at fault for the collision.[6] Plaintiff's remaining claim is against State Farm in its capacity as his primary uninsured motorist coverage carrier.[7]

---

[1] R. Doc. 156.
[2] The parties also refer to RFAs as rhizotomies.
[3] R. Doc. 182.
[4] R. Doc. 1-4 at 1.
[5] *Id.* at 3.
[6] R. Doc. 199.
[7] Plaintiff's claims brought on behalf of his minor children have been dismissed. R. Doc. 209. Plaintiff's claims against Defendant Velasquez and Defendant Nautilus Insurance Company have been dismissed. R. Doc. 199.

1

Plaintiff alleges he suffered injuries to his neck, back, left shoulder, and right elbow in the accident.[8] Plaintiff has received treatment for his neck and back pain from numerous doctors. One such treatment is an RFA, a procedure in which a probe is guided into the pain causing nerve and radiofrequency waves are used to burn the nerve, impairing the nerve's ability to carry pain signals to the brain.[9] Between September of 2016 and the present, Plaintiff has received three RFAs to his cervical spine and four RFAs to his lumbar spine.[10]

Dr. Schlosser and Dr. DeFrancesch, two of Plaintiff's physicians, testified at their depositions it is more probable than not Plaintiff will require an annual cervical and lumbar RFA for the remainder of his life.[11] In his expert report, Dr. Schlosser said, "I would recommend that Mr. Brandner receive RFAs to the Cervical and Lumbar region of his body for a lifetime as long as he receives benefits which allow him to live a reduced pain lifestyle."[12] Plaintiff's life care planner, Dr. Shelly Savant, relied on these opinions and included in her calculation of Plaintiff's future medical needs the cost of annual cervical and lumbar RFAs for Plaintiff's estimated thirty-six year life expectancy.[13] On December 24, 2018, State Farm filed the instant motion *in limine*, seeking to exclude the testimony of Dr. Schlosser and Dr. DeFrancesch regarding Plaintiff's need for a lifetime

---

[8] R. Doc. 1-4 at 5.
[9] R. Doc. 156-7 at 9; R. Doc. 156-9 at 55.
[10] R. Doc. 203 at 7-8.
[11] Dr. DeFrancesch, R. Doc. 156-9 at 80 ("Q: You estimate a need for repeat every—repeat RFAs one to two times a year per life? A: Yes."); Dr. Schlosser, R. Doc. 156-12 at 30-31 ("Would you say it's more probable than not that Mr. Michael Brandner would need cervical rhizotomies as described by Dr. Lonseth and Dr. Savant as of February 2017? A: Yes. . . . Q: Dr. Savant and Dr. Lonseth, as of February 2017, thought Mr. Brandner may need one lumbar rhizotomy per year for the next 38 years. Would you agree with that or disagree with that? A: Agree. Q: Doctor, more probable than not, based upon your examinations, your prior treatment of Michael Brandner, your current treatment of Michael Brandner, that it's more probable than not that he will require a lumbar rhizotomy per year for the rest of his life? A: Yes.").
[12] R. Doc. 156-13 at 5.
[13] R. Doc. 156-6 at 10. Dr. Savant also prepared a life care plan based on Dr. Lonseth's opinion that a total of eight cervical and eight lumbar rhizotomies is appropriate. R. Doc. 156-6 at 6.

of annual RFAs and also to exclude Dr. Savant's testimony regarding the lifetime cost of those procedures. State Farm argues the opinions of Dr. DeFrancesch and Dr. Schlosser are unreliable because they are unsupported by medical evidence, testing, scientific studies, or the clinical experience of the doctors themselves. As a result, State Farm argues the portion of Dr. Savant's testimony based on these opinions of Dr. DeFrancesch and Dr. Schlosser also is unreliable.

Additionally, State Farm seeks to exclude Dr. Savant's testimony regarding future treatments that Plaintiff has not undergone at this point, such as occupational therapy, pain psychology, family therapy, chronic pain therapy, physical medicine and rehabilitation, standard bloodwork, NSAIDs, and wellness center membership.[14] The Court will address the admissibility of these future medical treatments by separate order.

The parties requested oral argument on the Motion *in Limine*.[15] At the pre-trial conference of this matter, Plaintiff requested a *Daubert* hearing. A district court is not required to hold a formal *Daubert* hearing, even when requested.[16] Rather, a district court must perform some type of *Daubert* inquiry and articulate its basis for admitting or denying expert testimony. The Court finds a *Daubert* hearing is not necessary in this case.

## **LEGAL STANDARD**

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and

---

[14] R. Doc. 156-6.
[15] R. Docs. 157, 165.
[16] *See, e.g., Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194 (5th Cir. 2016); *U.S. v. Hoang*, 285 Fed. Appx. 133 (5th Cir. 2008).

methods," and "the expert has reliably applied the principles and methods to the facts of the case."[17] The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on particular subject matter.[18] If the expert's qualifications are found to be sufficient, the court then must examine whether the expert's opinions are reliable and relevant.[19]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[20] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether the expert's testimony is relevant and reliable.[21] The party offering the expert opinion must show this by a preponderance of the evidence.[22]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[23] Although there are "no certainties in science," the expert's conclusions must be "ground[ed] in the methods and procedures of science."[24] The expert's opinions must be based on more than subjective belief or unsupported speculation.[25] "Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known. In short, the

---

[17] FED. R. EVID. 702.
[18] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 799 (E.D. La. 2011). *See also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").
[19] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[20] 509 U.S. 579 (1993).
[21] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert*, 509 U.S. at 592–93).
[22] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[23] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[24] *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010); *see also Daubert*, 509 U.S. at 590.
[25] *Daubert*, 509 U.S. at 589.

requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability."[26]

In *Daubert*, the Supreme Court enumerated several non-exclusive factors courts may consider in evaluating the reliability of expert testimony.[27] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[28] Generally, reliable scientific theories are those that have been formulated, studied, measured, and tested scientifically, establishing the validity or not of the theory and identifying the known or potential rate of error in application of the theory; the results of the rigorous testing of the theory have been submitted for peer review and, optimally, have been published in a peer reviewed journal; and the theory has been generally accepted by the scientific community. The district court has broad latitude in making determinations regarding the admissibility of expert testimony and theories.[29]

To admit testimony regarding future medical expenses under Louisiana law, the plaintiff must demonstrate proof by a preponderance of the evidence that the future medical expenses are necessary and inevitable.[30] The court may exclude evidence of future treatment costs if the evidence establishes it is only treatment the plaintiff *might*

---

[26] *Id.* at 579.
[27] *Id.* at 592–96.
[28] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[29] *See, e.g., Kumho Tire*, 526 U.S. 137, 151–53 (1999).
[30] *See, e.g., Boudreax v. Ace Am. Ins. Co.*, No. 11-1213, 2013 WL 1288633, *3 (E.D. La. Mar. 26, 2013); *Stiles v. K Mart Corp.*, 597 So. 2d 1012, 1013 (La. 1992).

5

need, rather than treatment the plaintiff *will probably* need.[31] Testimony of treatment the plaintiff might need is not reliable and is often more prejudicial than probative.

## LAW AND ANALYSIS

### I. Qualifications of Dr. DeFrancesch and Dr. Schlosser[32]

Plaintiff, as the proponent of the testimony, has the burden of proving by a preponderance of the evidence that Dr. DeFrancesch and Dr. Schlosser possess the requisite qualifications to render opinions on the particular subject at issue.[33] "With respect to qualifications, the proponent must demonstrate that the expert possesses a higher degree of knowledge, skill, experience, training, or education than an ordinary person."[34] "Additionally, the expert[']s qualifications must relate to the testimony the expert witness provides."[35]

The parties do not dispute the qualifications of Dr. DeFrancesch and Dr. Schlosser to testify as to the routine diagnosis and treatment of patients experiencing neck and back pain, such as Plaintiff. Dr. DeFrancesch is a board certified physical medicine and rehabilitation and pain and spinal cord injury specialist.[36] Dr. Schlosser is a board certified physical medicine rehabilitation and pain medicine specialist.[37]

The issue before the Court is whether Dr. DeFrancesch or Dr. Schlosser is qualified to testify that Plaintiff's having annual cervical and lumbar RFAs for the next thirty-six years is medically necessary and is treatment the Plaintiff probably will need. Neither Dr.

---

[31] *Anders v. Hercules Offshore Servs., LLC*, 311 F.R.D. 161, 165 (E.D. La. 2015) (citing *Boudreax*, 2013 WL 1288633 at *3).
[32] The qualifications of Dr. Savant as a life care planner are not at issue.
[33] *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[34] *Louviere v. Black & Decker U.S., Inc.*, No. 1:00CV597 (TH), 2001 WL 36385828, at *1 (E.D. Tex. Oct. 26, 2001) (citing FED. R. EVID. 702).
[35] *Jimenez v. United States*, No. SA-5:13-CV-096-OLG, 2014 WL 3907773, at *1 (W.D. Tex. July 25, 2014).
[36] R. Doc. 156-9 at 121.
[37] R. Doc. 156-12 at 8.

6

Schlosser nor Dr. DeFrancesch claims to have conducted research into whether the RFAs may be administered annually for thirty-six years. Neither one has personal experience administering RFAs to patients for more than ten years. Dr. Schlosser testified in deposition that he and his practice have not had the opportunity to determine whether RFA procedures done beyond ten years are efficacious.[38] Dr. Schlosser admitted he would be speculating, based only on his medical knowledge, if he testified that RFAs would continue to be efficacious beyond ten years.[39] In deposition, Dr. DeFrancesch testified the longest period he has treated a patient using periodic RFAs is ten years.[40] He later said he "knew of" patients who treated using RFAs for longer than ten years but he did not identify or produce records with respect to any of them.[41] Dr. DeFrancesch testified he has treated a number of patients for more than ten years, but he did not testify that the patients in question had received RFAs during each year of their over ten-year treatment.[42]

If a witness such as Dr. Schlosser or Dr. DeFrancesch is relying "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"[43] Neither Dr. DeFrancesch nor Dr. Schlosser explains how his own experience treating patients for up to ten years qualifies him to express an opinion that it is more likely than not annual RFAs for the next thirty-six years

---

[38] *Id.* at 72.
[39] *Id.*
[40] R. Doc. 156-9 at 15-16.
[41] *Id.* at 16.
[42] *Id.* at 17-22.
[43] FED. R. EVID. 702, advisory committee's notes to 2000 amendment.

7

are medically necessary for Plaintiff. Whether an expert opinion is based on personal experience or professional studies, the expert must employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[44] This intellectual rigor typically requires testing, publication, peer review, and general acceptance.[45] Dr. Schlosser and Dr. DeFrancesch have met none of these markers based on their personal experiences as treating physicians. As a result, the Court finds the personal experiences of Dr. DeFrancesch and Dr. Schlosser do not provide a sufficient foundation to establish the reliability of their opinions regarding the medical necessity of annual administration of cervical and lumbar RFAs over the next thirty-six years.

II. **Reliability of the Opinions of Dr. Schlosser and Dr. DeFrancesch**

In addition to their own personal experiences treating pain patients, Dr. DeFrancesch and Dr. Schlosser testified that they based their opinions on medical studies. The Court must determine whether these studies are sufficient to render their opinions reliable and relevant.[46] Plaintiff, as the proponent of the testimony, has the burden of proving this by a preponderance of the evidence.[47]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[48] Although there are "no certainties in science," an expert's conclusions must be "ground[ed] in the methods and procedures of science."[49] The opinion or theory "must be supported by

---

[44] *Kumho Tire Co.*, 526 U.S. at 152.
[45] *Black v. Food Lion*, 171 F.3d 308 (1999).
[46] *Valencia*, 600 F.3d at 424; *Wagoner*, 813 F. Supp. at 799. *See also Wilson*, 163 F.3d at 937 ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").
[47] *Mathis*, 302 F.3d at 459–60.
[48] *Knight*, 482 F.3d at 352. *See also Burleson*, 393 F.3d at 584; *Bocanegra*, 320 F.3d at 584–85.
[49] *Wells*, 601 F.3d at 378; *see also Daubert*, 509 U.S. at 590.

8

appropriate validation—i.e., 'good grounds,' based on what is known."[50] The *Daubert* factors, including testing, peer-reviewed publication, and general acceptance in the scientific community, assist the Court in making a determination regarding the reliability and admissibility of expert opinion testimony.[51]

With respect to relevance and reliability of an expert opinion, courts in the Eastern District of Louisiana have explained that, "[t]o meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required."[52] The expert's scientific opinions must be based on more than subjective belief or unsupported speculation.[53] Further, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[54]

State Farm argues the opinions of Dr. DeFrancesch and Dr. Schlosser are unreliable because there is no medical research or study to support their opinions that having RFAs for thirty-six years is a medical necessity and is treatment Plaintiff probably will need. At his deposition, Dr. DeFrancesch quotes his expert report as saying, "[t]he RFA[s] are more probable than not medically necessary. The plan to perform the procedures noted above . . . would likely require RFA, radiofrequency, one to two times

---

[50] *Daubert*, 509 U.S. at 579.
[51] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[52] *See, e.g., Martinez v. Offshore Specialty Fabricators, Inc.*, No. 08-4224, 2011 WL 820313, at *2 (E.D. La. Mar. 2, 2011).
[53] *Daubert*, 509 U.S. at 589.
[54] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

9

annually for life."[55] In deposition, Dr. DeFrancesch testified that, based on the information he has with respect to the efficacy of the RFAs Plaintiff has had thus far, it was more probable than not that plaintiff would continue to experience the same type of relief in the future with RFAs.[56] When questioned about the basis of his opinion, Dr. DeFrancesch recalled "some very good studies more recently from New Zealand that show [the] effectiveness [of RFAs]" and was able to recall the author of those studies, Dr. MacVicar.[57] Plaintiff's counsel later produced two articles, which State Farm attached to its motion *in limine*:

(1) MacVicar, et al., *Cervical Medial Branch Radiofrequency Neurotomy in New Zealand* (*Pain Medicine*, 2012)[58] and

(2) MacVicar et al., *Lumbar Medial Branch Radiofrequency Neurotomy in New Zealand* (*Pain Medicine*, 2012).[59]

The MacVicar articles cited by Dr. DeFrancesch evaluate the effectiveness of RFAs over a period of at most **seven to ten years** and focus on the interval at which the procedure needs to be repeated for pain relief. Nowhere in these studies is there support for the opinion that RFAs remain efficacious if administered annually for a period of thirty-six years.

In his expert report, Dr. Schlosser recommended "that Mr. Brandner receive RFAs to the Cervical and Lumbar region of his body for a lifetime as long as he receives benefits which allow him to live a reduced pain lifestyle."[60] In deposition, Dr. Schlosser testified it

---

[55] R. Doc. 156-9 at 123. The expert report was not attached to the motion *in limine* or opposition. Dr. DeFrancesch's report has been provided to the Court and is attached hereto. The report does not identity with specificity any medical literature on which he relies.
[56] R. Doc. 156-9 at 132.
[57] *Id.* at 36. Dr. DeFrancesch also referred to a study by Dr. Govind, which was not attached to or referenced in the motion *in limine* or opposition. *Id.* at 71, 117. This study has never been provided by Plaintiff's counsel and will not be considered by the Court as support for Dr. DeFrancesch's opinion.
[58] R. Doc. 156-10.
[59] R. Doc. 156-11.
[60] R. Doc. 156-13 at 5.

was more probable than not that Plaintiff would require an annual cervical and lumbar RFA for the remainder of his lifetime.[61] When asked in deposition whether there was medical literature to support his opinion that RFAs may be performed repeatedly for a period longer than ten years, Dr. Schlosser offered to "get the specifics" for State Farm.[62] The parties agreed to hold the deposition open for thirty days so that Dr. Schlosser could provide medical literature supporting performing repeated RFAs beyond seven to ten years.[63] Eight months following the deposition, Dr. Schlosser issued an expert report, citing articles to support his opinion that it is medically necessary for Plaintiff to receive annual RFAs for the remainder of his lifetime.[64] In his expert report, Dr. Schlosser relies on the following studies, produced by counsel for State Farm and attached to the motion *in limine*:

(1) MacVicar, et al., *Cervical Medial Branch Radiofrequency Neurotomy in New Zealand* (*Pain Medicine*, 2012);[65]

(2) MacVicar et al., *Lumbar Medial Branch Radiofrequency Neurotomy in New Zealand* (*Pain Medicine*, 2012);[66]

(3) Stelzer, et al., *Influence of BMI, Gender, and Sports on Pain Decrease and Medication Usage After Facet-Medial Branch Neurotomy or SI Joint Lateral Branch Cooled RF-Neurotomy In Case of Law Back Pain: Original Research in the Australian Population* (Journal of Pain Research, 2017);[67]

(4) Son, et. al., *The Efficacy of Repeated Radiofrequency Medial Branch Neurotomy for Lumbar Facet Syndrome* (Journal of Korean Neurosurgery Society 2010);[68]

---

[61] R. Doc. 156-12 at 30, 32, 100-101.
[62] *Id.* at 73.
[63] *Id.* at 73-75.
[64] R. Doc. 156-13.
[65] R. Doc. 156-10.
[66] R. Doc. 156-11.
[67] R. Doc. 156-14.
[68] R. Doc. 156-15.

(5) Shabat, et al., *Radiofrequency Treatment Has a Beneficial Role in Reducing Low Back Pain Due to Facet Syndrome in Octogenarians or Older* (International Journal of Clinical Interventions in Aging, 2013);[69]

(6) McCormick, et al., *Long-Term Function, Pain and Medication Use Outcomes of Radiofrequency Ablation for Lumbar Facet Syndrome* (International Journal of Anesthetics and Anesthesiology, 2015);[70]

(7) Dragovich & Trainer, *A Report of 3 Soldiers Returned to Full Duty After Lumbar Radiofreqency Facet Denervation in a Theater of War* (Pain Medicine, 2011);[71] and

(8) Smuck, et al., *Success of Initial and Repeated Medial Branch Neurotomy for Zygapophysial Joint Pain: A Systematic Review* (PM&R Journal, 2012).[72]

The Court discussed the shortcomings of the MacVicar articles on which Dr. Schlosser relies in relation to Dr. DeFrancesch's deposition testimony. None of the remaining six articles referenced in Dr. DeFrancesch's report supports his opinion that annual RFAs are medically necessary for thirty-six years. Instead, the reports concern the efficacy of RFAs under often different circumstances and over much shorter time periods:

(3) The study by Seltzer, et al. focused on the influence of BMI, gender, and sports on the outcome of *single cooled* RFAs. The study did not examine repeated RFAs, did not use *heated* RFAs like the ones Plaintiff has received, and did not evaluate the use of the procedure for a period beyond **twelve months**.[73]

(4) The study by Son et al. examines repeated RFAs over only a **three-year** period. The study notes, "the successful outcome and duration of relief from repeated procedures are not clearly known . . . **further prospective study in a large group, controlled, blinded trial in a longer period of time should be followed**."[74]

---

[69] R. Doc. 156-16.
[70] R. Doc. 156-17.
[71] R. Doc. 156-18.
[72] R. Doc. 156-19.
[73] R. Doc. 156-14.
[74] R. Doc. 156-19 at 6.

12

(5) The study by Shabat et al. examines patients over the age of eighty with a follow up period up to **twelve months** and does not study repeated RFAs.[75]

(6) The "long-term" study conducted by McCormick, et al. had a follow up period averaging only **thirty-nine months**.[76]

(7) Dragovich & Trainer's study evaluates only three patients (soldiers in Iraq) over a **six-month** period.[77]

(8) Smuck et al. did not conduct an original study and instead reviewed and synthesized findings from other studies regarding the duration of pain relief provided by an RFA. The pooled data analyzes approximately **six years** of treatment with RFAs. The study notes, "additional research is needed to understand the mechanisms behind the prolonged pain relief observed clinically,"[78] and "**better long term studies on the long-term efficacy of initial and repeated [RFAs] are needed**."[79]

Neither Dr. Schlosser nor Dr. DeFrancesch has documented how the studies on which they relied were conducted, whether the studies were peer reviewed, or whether the results of the studies have been generally accepted by the scientific community. Neither have they explained how the studies support their opinions regarding the medical necessity of annual RFAs for thirty-six years. The Court may not rely on the experts' assurances that their opinions are backed by generally accepted scientific methodology. The opinions of Dr. DeFrancesch and Dr. Schlosser must be "based on more than subjective belief or unsupported speculation."[80] Neither doctor has established that the opinions have been tested, validated, or generally accepted. Rather, the doctors' opinions are "connected to existing data only by the *ipse dixit* of the expert."[81]

---

[75] R. Doc. 156-16.
[76] R. Doc. 156-17.
[77] R. Doc. 156-18.
[78] R. Doc. 156-19 at 4.
[79] *Id.* at 6.
[80] *Daubert*, 509 U.S. at 589.
[81] *Gen. Elec. Co.*, 522 U.S. at 146.

13

Plaintiff had the opportunity before, during, and after the doctors' depositions to identify and provide copies of scientific studies supporting the opinions of Dr. DeFrancesch and Dr. Schlosser. Expert witnesses are required to provide expert reports, including the basis and reasons for all opinions, in accordance with the Court's scheduling order and Federal Rule of Civil Procedure 26.[82] Dr. Schlosser provided an expert report, referencing only the eight articles discussed above.[83] Dr. Francesch provided only the two articles discussed above at this deposition. Now, at the last minute, in opposition to the Motion *in Limine*[84] Plaintiff's counsel attached two additional articles.[85] There is no evidence Dr. Schlosser or Dr. DeFranesch read or relied on either article in formulating his opinion. The Court will not consider studies purporting to support an expert's opinion which were not disclosed before or discussed in the expert's report or deposition.[86]

While no one factor in the Daubert analysis is determinative, the basis of Dr. Schlosser's and Dr. DeFrancesch's testimony fails on all points. The theory of Dr. DeFrancesch and Dr. Schlosser has not been studied and tested scientifically, the rate of error has not been established, the results of testing have not been published, the theory has not been subjected to peer-review, and the opinions have not been generally accepted in the scientific community. Dr. DeFrancesch was not aware of any study that examined

---

[82] R. Doc. 202.
[83] R. Doc. 156-13.
[84] R. Doc. 182.
[85] R. Doc. 182-2; R. Doc. 182-3.
[86] Neither report supports the opinions of Dr. Schlosser and Dr. DeFranesch. The Court notes the NIH report calls into question previous clinical studies on low back pain based on differing exclusion/inclusion criteria, case definitions, baseline assessments, stratification criteria, and outcome measures. The report writers conclude the seeming lack of progress in reducing back-related disability may be the result of "claiming treatment efficacy based on statistically significant but clinically trivial results." The NIH report concludes, "more data are needed to determine the performance of such measures in terms of validity, reliability, responsiveness, and prognostic value." R. Doc. 182-2 at 13. These same points may be made in relation to the clinical studies on the use of RFAs, even with respect to shorter time periods than those at issue in this case.

14

administering RFAs for a period of more than ten years.[87] Dr. Schlosser admitted he has not seen any journals that support his opinion.[88] Dr. Schlosser agreed that the majority of studies examine the performance of RFAs for a period of seven to ten years, supporting the efficacy of RFAs for that length of time but not longer.[89] When asked whether there was medical literature to support continued RFAs for a period of thirty-eight years, Dr. Schlosser could respond only, "but there's no data to the contrary."[90] The opinions of Plaintiff's own treating physicians refute the testimony of Dr. Schlosser and Dr. DeFrancesch. Dr. Eric Lonseth testified there is clinical evidence and literature to show that RFA treatment may be performed only for up to seven years.[91] Dr. Everett Robert testified he would recommend only two to three RFAs and would not recommend annual RFAs for thirty-eight years.[92]

A Louisiana state court has reduced an award for future medical expenses when the award included semi-annual RFAs for the remainder of a plaintiff's life, finding the lifetime recommendation was not supported by the medical evidence at trial. In *Davis v. Foremost Diaries et al.*, the Louisiana Second Circuit Court of Appeal reduced the future medical expense award because there was no expert medical testimony that "such lifetime treatment would be either effective or necessary."[93] Importantly, the plaintiff's physician "never explained whether the procedure could be repeated on the same nerves for [Plaintiff's] lifetime without alteration or harm to nerves which would terminate the

---

[87] R. Doc. 156-9 at 72.
[88] R. Doc. 156-12 at 71.
[89] R. Doc. 156-12 at 71.
[90] *Id.* at 71.
[91] R. Doc. 156-8 at 12-16.
[92] R. Doc. 182-1 at 95.
[93] No 45,835, pp. 21-22 (La. App. 2 Cir. 2/16/11); 58 So.3d 977, 991.

15

availability or effectiveness of the treatment."[94] "Due to this lack of proof to indicate the expected duration of the procedures," the appellate court reduced the award for future medical expenses.[95]

Another Louisiana state court reduced an award for future medical expenses that included an award for future RFAs because the plaintiff failed to prove it was more probable than not that he would require the future RFAs.[96] In *Flowers v. Miller*, the plaintiff's physician testified he would perform a medial branch block "to see if the [RFA] will work for her." Depending on the result of the medial branch block, the doctor testified she *might* need an RFA. The Louisiana First Circuit Court of Appeal reduced the award for future medical expenses because plaintiff "failed to prove [the RFAs] would be necessary and inevitable by a preponderance of the evidence."[97]

The Plaintiff relies on the decisions by two courts in this district allowing testimony regarding Plaintiff's need for lifetime RFAs. In *Coston v. Windfall, Inc.*, the district court denied a motion in limine and admitted testimony regarding the plaintiff's need for periodic RFAs for the remainder of his lifetime.[98] Plaintiff's treating physician testified he believed the plaintiff would need future treatment and he would continue to perform RFAs on the plaintiff as long as they provided relief.[99] The court admitted the testimony

---

[94] *Id.*
[95] In another Louisiana Second Circuit case, the appellate court amended the damages awarded to the plaintiff to include the costs of RFAs over her lifetime, but the appellate court focused on proof of the need for future medical care rather than the scientific validity of the kind of medical care. *See Cooley v. Adgate*, 52,000-CA (La. App. 2. Cir. 5/30/18); 248 So. 3d 753.
[96] *Flowers v. Miller*, 10-1201, p. 7 (La. App. 1 Cir. 3/25/11); 2011 WL 1225903 at*7.
[97] *Id.*
[98] No. 15-1809, 2016 WL 1660199, at *3 (E.D. La. Apr. 27, 2016).
[99] *Id.*

and emphasized that the defendants would be entitled to vigorous cross-examination to attack what it believed to be shaky evidence.[100]

In *Berry v. Roberson*, the district court declined to grant either a new trial or remittitur after the jury awarded future medical expenses including costs for periodic RFAs for the remainder of the plaintiff's lifetime, finding the evidence adequately supported the award because it was more probable than not the plaintiff would require pain management therapy for the rest of his life, and would likely continue to need ablations performed at least once a year.[101] The Fifth Circuit affirmed the district court's denial of the new trial or remittitur finding that the jury evidently credited Dr. Turnipseed's testimony.[102] It appears from the record that no Daubert motion was filed before the trial of this case.

After performing its gatekeeping analysis, this Court finds Plaintiff has not proven by a preponderance of the evidence that the opinions of Dr. DeFrancesch and Dr. Schlosser meet the requisite level of intellectual rigor to be reliable and admissible.[103] In this case, the Court finds the total lack of scientific support for the opinion testimony justifies exclusion under *Daubert*.

## **CONCLUSION**

To be admissible, expert testimony must be the product of reliable principles and methods.[104] After assessing the reliability of Dr. DeFrancesch's and Dr. Schlosser's

---

[100] The expert in the *Coston* case, Dr. Turnipseed, testified that typically rhizotomies lose their efficacy in terms of treating a patient's pain after five procedures and that eventually the patient will have to find another option to address her pain. *Id.*
[101] No. 13-145, 2015 WL 1935884, at *4 (W.D. La. Apr. 28, 2015). In this case, Dr. Turnipseed testified that he had personally given patients annual rhizotomies for longer than seven years with good results and that he successfully used the procedure on patients ten years in a row. *Id.* at **3-4.
[102] *Berry v. Auto-Owners Ins. Co.*, 634 F. App'x 960 (5th Cir. 2015).
[103] *Kumho Tire Co.*, 526 U.S. at 152.
[104] FED. R. EVID. 702.

proffered expert testimony with respect to Plaintiff's need for annual cervical and lumbar RFAs for the remaining thirty-six years of his life expectancy, the Court finds Plaintiff has not met his burden of proving by a preponderance of the evidence that this testimony meets the standards of Federal Rule of Evidence 702 and *Daubert*. Plaintiff has not met his burden of establishing the doctors' experience qualifies them to offer this opinion. Neither has Plaintiff shown that the doctors' opinions are supported by peer-reviewed studies the results of which have gained general acceptance in the scientific community. As a result, there is no evidence establishing the "reasoning or methodology underlying the testimony is scientifically valid," [105] and the opinions do not meet the requisite level of intellectual rigor to be reliable and admissible.[106] Dr. DeFrancesch's and Dr. Schlosser's testimony regarding Plaintiff's need for annual cervical and lumbar RFAs for the remaining thirty-six years of his life expectancy will be excluded. Dr. DeFrancesch and Dr. Schlosser will be permitted to testify, based on their personal knowledge and experience treating patients, and the studies cited examining RFA administration for seven to ten years, that it is more probable than not that Plaintiff will need and will benefit from up to ten annual RFAs. Dr. Savant's testimony will be limited accordingly. Dr. Savant will be permitted to testify as to the cost of Plaintiff's receiving seven additional cervical RFAs and six additional lumber RFAs.

For the foregoing reasons, **IT IS ORDERED** that State Farm's Motion *in Limine*[107] is **GRANTED IN PART AND DENIED IN PART.** Plaintiff will not be permitted to introduce testimony regarding his need for and the cost of annual cervical and lumbar RFAs for the remaining thirty-six years of his life expectancy. Plaintiff will be

---

[105] *Knight*, 482 F.3d at 352. *See also Burleson*, 393 F.3d at 584; *Bocanegra*, 320 F.3d at 584–85.
[106] *Kumho Tire Co.*, 526 U.S. at 152.
[107] R. Doc. 156.

permitted to introduce testimony regarding his need for and the cost of receiving seven additional cervical RFAs and six additional lumber RFAs.[108]

**New Orleans, Louisiana, this 14th day of February, 2019.**

                                                  *Susie Morgan*
                                             **SUSIE MORGAN**
                                **UNITED STATES DISTRICT JUDGE**

---

[108] The parties' requests for oral argument on the motion *in limine*, R. Docs. 157 and 165, are **DENIED.**